IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THOMAS E. PEREZ,
Secretary of Labor,
United States Department of Labor,
          Plaintiff,

vs.

ZL RESTAURANT CORPORATION,
D/B/A FAMOUS WOK, and
LIXIN ZHANG, an individual,
          Defendants.

No. 13-CV-0075-MV-GBW

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment [Doc. 23]. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the Plaintiff's Motion is well-taken and will be **GRANTED**.

### PROCEDURAL BACKGROUND

This Motion comes as the latest in a case plagued by procedural and formal irregularities, each apparently stemming from the dual impediments posed by Lixin Zhang's status as a *pro se* litigant and his limited command of the English language. Zhang, and his wholly-owned corporation, ZL Restaurant Corporation ("ZL" or the "Corporation"), initially co-defendants in this matter, failed timely to respond to Plaintiff's Complaint [Doc. 1], prompting Magistrate Judge Lynch to demand an explanation as to why the case had not progressed [Doc. 5]. Apparently sympathetic to the obstacles that Zhang faces in this suit, the Plaintiff elected to cooperate actively with the Defendant to move the case forward; satisfied with this explanation,

1

Magistrate Judge Lynch extended the time to file an answer from April 8, 2013 to July 22, 2013. Docs. 6, 7.  On July 22, 2013, Zhang evidently e-mailed Plaintiff what appeared to be an answer written in one of the Chinese languages.  Doc. 8.  The Court provided Defendants yet more time in which to file the answer with the Court in English.  *Id.* at 2.  The Defendants complied and filed an English-language "Answer for Complaint" on August 12, 2013.  Doc. 9.

However, Zhang signed this answer on behalf of himself and the Corporation, in violation of one of this district's local rules, which provides that corporations may appear only through attorneys admitted to practice before the Court.  *See* Doc. 11.  *See also* D.N.M.LR-CIV. 83.7.  Consequently, the Magistrate Judge entered an Order to Show Cause [Doc. 11], which explained the applicable local rule, provided the Corporation an opportunity to secure counsel and file an Answer, and expressly warned that "failure to comply will result in the earlier Answer being stricken and a default judgment being entered" against the Corporation.  *Id.* at 1. The Corporation declined to respond to the Order by the deadline and did not obtain licensed counsel, such that the Answer was stricken as to the Corporation and a Default Judgment [Doc. 15] was entered against it.  *See generally* Docs. 13, 15.

The Plaintiff now moves for summary judgment against Zhang, the sole remaining Defendant in this matter.  *See* Doc. 23.  Consistent with the history of this case, Zhang's filings in response to the Plaintiff's Motion exhibit several irregularities that violate the rules of procedure applicable to summary judgment, including, for example, failing to conform his Memorandum in Opposition to Motion for Summary Judgment [Doc. 25] and Amendment to Defense's Memorandum in Opposition to Motion for Summary Judgment [Doc. 28] to local rule 56 and cite competent evidence in the manner required by Federal Rule of Civil Procedure 56. *See* D.N.M.LR-CIV. 56; Fed. R. Civ. P. 56.  Although Zhang is a *pro se* litigant and this Court

must interpret his filings liberally, his duty to abide by all rules of procedure, including the local rules, is not abated. *See Keeher v. Dunn*, 409 F. Supp. 2d 1266, 1270 (D. Kan. 2005) ("plaintiffs are not excused from compliance with fundamental rules of procedure because they are proceeding *pro se*. *Pro se* litigants must follow rules of procedure, including local rules."); *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (upholding dismissal of a claim predicated on a *pro se* litigant's violation of a local rule that provided that failure timely to respond would result in "a confession" of the matters raised by the moving party); *Solis v. Supporting Hands*, No. CIV 11–0406 JB/KBM, 2013 WL 1897822, at *1 (D.N.M. Apr. 30, 2013) ("because the [*pro se*] Defendants have not filed a timely written response contesting any of the paragraphs in the Plaintiff's statement of the undisputed facts, the Court may take the facts as the Plaintiff has stated them."); *Franke v. ARUP Labs., Inc.*, 390 F. App'x 822, 826 (10th Cir. 2010) ("a pro se plaintiff must strictly comply with the requirements of Rule 56 in order to properly contest a motion for summary judgment.").

    As a result of Zhang's refusal to comply with the applicable procedural rules, the findings of fact below are drawn exclusively from the Plaintiff's Statement of Undisputed Facts. *See* Doc. 23-1 at 2-11. That is, because Zhang has not offered any substantive counter statement of facts and because both of his responses suffer from significant procedural defects, the Court will disregard the purported factual content of his two responses. *See* Docs. 24, 28. *See also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may… consider the fact undisputed for purposes of the motion."). Indeed, each of the statements contained in Zhang's responses is either illogical, irrelevant, unsupported, or a mere promise of future evidence. *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996) ("Once the movant has made a showing that there is

no genuine issue of material fact, the non-moving party may not rest upon the mere allegations or denials of the pleadings.") (internal quotation marks omitted); *United States v. Hopkins*, 927 F. Supp. 2d 1120, 1155 (D.N.M. 2013) ("It is not enough for the party opposing a properly supported motion for summary judgment to rest on mere allegations or denials of his [or her] pleadings.") (internal quotation marks omitted); *Bell Lumber and Pole Co. v. U.S. Fire Ins. Co.*, 847 F. Supp. 738, 742 (D. Minn. 1994) ("The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial."). Further, none of Zhang's factual exhibits or "affidavits" [Doc. 28, ex. C-G] is properly sworn. *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) ("a district court may properly reject unsworn documents."); *Clark v. Thomas*, 505 F. Supp. 2d 884, 888 n.1 (D. Kan. 2007) ("Unsworn statements do not constitute proper evidence for consideration upon summary judgment."). Consequently, these, too, will be disregarded for the purposes of this Motion. *Hagelin for President Comm. of Kansas v. Graves*, 25 F.3d 956, 959 (10th Cir. 1994) ("Because the state failed to submit any materials contradicting plaintiffs' statement of facts in support of their motion for summary judgment, these facts are deemed admitted.").

    As none of these statements or exhibits will be considered by the Court, the Court will not refute them exhaustively in its description of the facts. *See Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007) ("That a party appears pro se, though entitled to some latitude not accorded to litigants represented by counsel, does not relieve him of the obligation to respond to a motion for summary judgment with sufficient admissible evidence.").

**FINDINGS OF FACT**

**I.   The First Investigation**

During the past three years, the Wage and Hour Division of the United States Department of Labor (the "Division") has conducted two investigations (the "First Investigation" and "Second Investigation") of Zhang and his restaurant. Doc. 23-1 ¶ 1.[1] At all relevant times, Zhang was the "sole owner of the corporate Defendant and was the decision maker with respect to the employees' terms of employment." *Id.* ¶¶ 4-5.

The First Investigation focused on "the time period August 10, 2009 through August 9, 2011." *Id.* ¶ 1. This investigation "included reviewing company documents, conducting employee interviews, and meeting with the employer's representative" in addition to requests for "time and payroll records" for the relevant period. *Id.* ¶ 2. The Defendants provided no such records to the Division. *Id.* After a series of employee interviews, the Division "determined that at least two employees, Camilo Pichardo ('Pichardo') and Ana Vasquez ('Vasquez,' [collectively, "the Employees"]), were covered employees under the Act because they engaged in interstate commerce when handling and processing credit card transactions." *Id.* ¶ 3. Pichardo also placed orders that traveled in interstate commerce with the restaurant's suppliers. *Id.*

The First Investigation produced two primary conclusions: (1) that Zhang had paid the Employees a fixed salary "that did not properly account for all hours worked during the workweek" and (2) that Zhang had not paid the Employees an amount sufficient to compensate them for applicable overtime. *Id.* ¶ 7. In the absence of payroll records from the Defendants, the Division calculated, based on interviews with employees and Zhang, that Pichardo and Vasquez

---

[1] Citations to specific paragraphs within Plaintiff's memorandum refer to paragraphs within the Statement of Undisputed Facts, which begins at page 2.

each worked 57.5 hours per workweek for 56 workweeks. *Id.* ¶¶ 8, 11. During this period, Pichardo and Vasquez received monthly salaries of $2,050 and $1,650, respectively, which result in average wages of approximately $8.23 and $6.62 per hour, respectively. *Id.* Consequently, both Pichardo and Vasquez were compensated significantly below the applicable Santa Fe minimum wage of $9.85 per hour; Vasquez was also paid less than the prevailing federal minimum wage of $7.25 per hour. *Id.* Over the course of the period covered by the First Investigation, Vasquez received $2,028.88 less than she would have received had Zhang paid her in accordance with the federal minimum wage. *See Id.*

Similarly, the Defendants did not pay the Employees time-and-a-half for the time they worked in excess of forty hours a week. *Id.* ¶ 9. Based on the 57.5 hour workweek calculated by the Division, the Employees each worked 17.5 hours of overtime each week. *Id.* ¶ 9. This figure was then multiplied by the applicable minimum wage in Santa Fe, which the Plaintiff supplied as regular rate. *Id.* Based on these conservative calculations, the Division determined that the Defendants owed the Employees a total of $11,692.24 for the time period covered by the first investigation. *Id.* ¶ 12.

The Division brought its findings to the Defendants' attention and met with Zhang to discuss the results. *Id.* ¶ 13. After explaining the violations to Zhang, the Division presented him with a "WH-56 form summarizing the back wages that Defendants owed their employees." *Id.* Zhang then signed the form and "agreed to pay the listed employees the back wages due and to mail proof of payment to the Wage and Hour District Office" along with two WH-58 forms to be signed and completed by the employees upon receipt of the back wages. *Id.*

The Division eventually received signed copies of the WH-58 forms, along with "two check printouts" which purported to show that the Defendants had paid the back wages to the

Employees.  *Id.* ¶ 15.  However, when the Division called the Employees to verify that they had, indeed, been paid the amount due to them, the Employees responded that they had not received any compensation and that, in fact, "Zhang had instructed the affected employees to endorse the back of blank checks and to sign the WH-58 forms" which they did not understand.  *Id.* ¶ 16.

## II. The Second Investigation

Approximately one week after learning that Zhang had not fulfilled his obligation to pay the Employees, the Division launched the Second Investigation of the Defendants; this investigation "covered the time period August 10, 2011 through February 17, 2012."  *Id.* ¶ 17.  The Second Investigation employed much the same methodology as the first; the Defendants again "provided no time or pay records," so the Division relied on other means of gathering information.  *Id.* ¶ 18.  As a result, "back wages were [again] reconstructed and calculated based on employee interviews of reported hours worked and the reported cash payments received from" the Defendants.  *Id.* ¶ 22.

The result of the Second Investigation was virtually identical to the first; the Division found that the "minimum wage, overtime, and recordkeeping violations" had not abated, although both Employees had been given modest monthly raises.  *Id.* ¶ 19.  That is, despite $50 and $100 increases in their monthly pay, respectively, Pichardo and Vasquez were still not paid enough to "satisfy the minimum wage requirements" and were not paid the required overtime.  *Id.*  Indeed, the Employees reported working "approximately 72 – 80 hours per workweek" until January 14, 2012, when both Employees were terminated.  *Id.* ¶¶ 20, 23.  Employing the same methodology as described for the first investigation, the Division determined that the Defendants owed the employees a total of $13,475.84 for the period covered by the Second Investigation; the

combined back wages assessed as a result of the two investigations totals $25,168.08.  *Id.* ¶ 25; Doc. 31-1 ¶¶ 3-5.

On February 17, 2012, the Division called Zhang "to discuss the payment of back wages resulting from the first investigation." *Id.* ¶ 26.  "During this telephone call, Mr. Zhang admitted that he had instructed the employees to execute the WH-58 forms and endorse the back of the checks, but that he had paid the employees the owed back wages in cash." *Id.*  Further, the Defendants have not provided any documentation to demonstrate that the Employees have been compensated, while the Employees have "confirmed that they have not received any payment of back wages." *Id.*

Approximately two weeks later, on February 29, 2012, the Division called Zhang "to discuss the second investigation and the results thereof, as well as to discuss the payment of back wages owed following the first investigation." *Id.* ¶ 27.  The Division informed the Defendants that they had continued to violate federal law and "presented Mr. Zhang with [another] WH-56 form summarizing the back wages that Defendants owed to their employees for the time period August 20, 2011 through January 14, 2012." *Id.*  In response "Zhang refused to comply with the FLSA in the future and also refused to pay the back wages owed." *Id.*

On October 23, 2012, the Division learned that the Defendants "shut down operation" of the restaurant, but the Division believes Zhang is "in the process of opening another restaurant in Santa Fe." *Id.* ¶¶ 29-30.  The Secretary of Labor subsequently brought the instant action pursuant to its authority under the Fair Labor Standards Act.

**DISCUSSION**

**I.  Summary Judgment**

The standard on a motion for summary judgment is by now well-established: "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lenox MacLaren Surgical Group v. Medtronic, Inc.*, 762 F. 3d 1114, 1118 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  For these purposes, an issue "is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and a fact is material if under the substantive law it is essential to the proper disposition of the claim." *Varnell v. Dora Consol. School Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014) (internal quotation marks omitted).  Thus, "a mere factual dispute need not preclude summary judgment." *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100 (10th Cir. 2002).

In evaluating the Motion, this Court will "consider all facts and evidence in the light most favorable to the parties opposing summary judgment." *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1154 (10th Cir. 2014).  However, in the instant case, because the material facts are uncontested, the sole issue is whether the facts adduced entitle the Plaintiff to judgment as a matter of law.

**II.  The Fair Labor Standards Act**

Congress passed the Fair Labor Standards Act of 1938 ("FLSA" or the "Act") in an effort to, among other goals, "protect workers from substandard wages and oppressive working hours." *Maestas v. Day & Zimmerman, LLC*, 972 F. Supp. 2d 1232, 1236 (D.N.M. 2013) (Herrera, J.).  *See also* 29 U.S.C. § 202; *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1149 (10th Cir. 1992) ("With the passage of FLSA in 1938, Congress established a comprehensive remedial scheme

9

requiring a minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number."). As is relevant here, the FLSA requires that covered employers pay their employees at least the federal minimum wage set by the Act, compensate employees at least time-and-a-half for all overtime hours, and maintain certain specified payroll records. *See* 29 U.S.C. §§ 206-207, 211. Violation of these provisions exposes employers to liability, including back wages, attorney's fees, and injunctions prohibiting future infractions.

### III. Application

As a threshold matter, there is no doubt that Zhang qualifies as an "employer" for the purposes of the FLSA and therefore may be subject to individual liability. *See Saavedra v. Lowe's Home Ctrs., Inc.*, 748 F. Supp. 2d 1273, 1284 (D.N.M. 2010) (Browning, J.) ("A person must be an 'employer' within the meaning of the [Act] to be held individually liable."). While the Act somewhat opaquely provides that an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee" and to "employ" is to "suffer or permit to work," case law has since clarified the contours of these definitions. *See* 29 U.S.C. § 203. Recognizing "the broad remedial purposes of the FLSA," courts apply a capacious "'economic reality' test to determine the scope of employee coverage under the FLSA in particular cases." *Johns v. Stewart*, 57 F.3d 1544, 1557 (10th Cir. 1995). Factors relevant to this inquiry include "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Hale v. State of Arizona*, 967 F.2d 1356, 1364 (9th Cir. 1992).

Based on the uncontroverted facts before the Court, Zhang patently qualifies as an employer. As the sole owner and operator of the restaurant, all managerial authority resided with him; he appears to have had exclusive control over personnel decisions and scheduling, evinced by the fact that he called the restaurant when he was not physically present to provide instructions, rather than delegating this responsibility. Doc. 23-1 ¶ 5. Further, it is apparent from the evidence before the Court that Zhang was responsible for setting the amount and manner in which the Employees were paid, including the decision to set a fixed monthly salary, irrespective of the hours the Employees worked. *See, e.g.*, *Id.* ¶¶ 5, 7-9. Finally, although Zhang evidently kept poor employment records, this fact does not alter the overall economic reality presented by the facts of this case: Zhang employed Pichardo and Vasquez during the period in question.

### a. The Minimum Wage Provisions

The FLSA requires that employers pay all covered employees at least the federal minimum wage for time "'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer.'" *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125 (10th Cir. 1994) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). During the period covered by the two investigations, the prevailing federal minimum wage was $7.25 per hour. *See* 29 U.S.C. § 206. For the purposes of this suit, the Plaintiff has elected to employ the federal minimum wage, rather than the Santa Fe minimum wage in its calculations of underpayment. Doc. 23-1 ¶ 8 n.2.

Here, the undisputed evidence demonstrates that Zhang paid both Employees less than the minimum wage. During the period covered by the First Investigation, Vasquez was paid $1,650 per month, irrespective of the hours she was required to work, and she worked, on

average, 57.5 hours per workweek. *Id*. Thus, during this period, Vasquez was compensated approximately $6.62 per hour, substantially lower than the federal minimum wage of $7.25 per hour. *Id.* Similarly, during the period covered by the Second Investigation, Pichardo and Vasquez were paid $2,100 and $1,750 per month, respectively, and worked approximately 72 – 80 hours per workweek, which results in roughly $6.73 and $5.61 per hour, respectively, during 72 hour workweeks. Stated differently, during the period covered by the First Investigation, Vasquez was paid $2,028.88 less than required by the minimum wage; during the period covered by the Second Investigation, Pichardo was paid $1,747.84 less than required by the minimum wage while Vasquez was paid $3,524.48 less than required by the minimum wage.[2] Zhang's argument that it would have been impossible for the Employees to work 72 – 80 hours per week because "the restaurant was open approximately 52 hours per week" and the mall in which it was located "was open 66 hours per week" is, frankly, risible. *See generally* Docs. 24, 28. Restaurant employees *necessarily* engage in preparation, cleaning, and cooking before a restaurant opens and spend time cashing out registers and cleaning after it has closed; to suggest otherwise is simply nonsensical.

The Plaintiff has demonstrated, based on the uncontested facts, that Zhang employed Pichardo and Vasquez, that both Employees engaged in interstate commerce as defined in the Act, and that each was paid less than the minimum wage at some point while employed at the restaurant. Therefore, the Plaintiff is entitled to judgment as a matter of law on the minimum wage claims. *See* 29 U.S.C. §§ 206(a), 215(a).

---

[2] Helpfully, the Plaintiff has cabined its claims to "those back wages that fall within the three-year statute of limitations period for willful violations of the Act." Doc. 23-1 at 19. Because Zhang has not raised the statute of limitations as a defense, the Court will apply the three year statute of limitations in this case. *See Donovan v. M & M Wrecker Service*, 733 F.2d 83, 85 (10th Cir. 1984) ("the defendant must plead the statute of limitations of § 255(a) as an affirmative defense.").

### b. The Overtime Provisions

In addition to providing for a minimum hourly wage, the Act also "generally requires covered employers to pay its employees overtime pay for work in excess of forty hours a week." *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1303 (10th Cir. 2011). Overtime hours must be compensated "at a rate not less than one and one-half times the regular rate." 29 U.S.C. § 207(a)(1). The "regular rate," in turn, is ordinarily "determined by looking to the employment arrangement" to ascertain the "hourly rate actually paid for the normal, non-overtime workweek." *Id.* at 1305. However, the regular rate cannot be lower than the minimum wage. *See Adams v. Dep't of Juvenile Justice of the City of New York*, 143 F.3d 61, 67 (2d Cir. 1998) ("nothing in the FLSA prevents an employer from contracting with its employees to pay them the same total wages received prior to FLSA applicability, so long as the regular rate equals or exceeds the minimum wage."); *Drake v. Hirsch*, 40 F. Supp. 290, 295 (N.D. Ga. 1941) (explaining that if the purported regular rate "is less than the minimum, then the minimum wage prescribed by the Act becomes the legal 'regular rate,' and is the base to be used not only in determining the minimum wage, but also the overtime compensation"); *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 310 (E.D.N.Y. 2009) ("Because plaintiff's regular wages for all the applicable periods are below the minimum wage, the plaintiff's regular rate for purposes of overtime should have been the full minimum wage.") (internal quotations and citation omitted).

The minimum wage to which the Employees were entitled during the period covered by the two investigations was the Santa Fe "living wage" of $9.85 per hour; although the Employees were unlawfully compensated less than this amount, the Court will treat the Santa Fe living wage as the applicable regular rate for overtime calculations. *See* Doc. 23-1 at 17-18. That is, because the $9.85 represents the lowest wage that Zhang could have *legally* paid for "the normal, non-

overtime workweek," the Court will use that amount as the regular rate in its overtime calculations. Based on this assumption, Zhang underpaid Pichardo and Vasquez $4,831.68 each during the period covered by the First Investigation and $4,101.76 each during the period covered by the Second Investigation. *See generally* Doc. 23-3. Hence, in aggregate, the back wages that Zhang owes the Employees total $25,168.08.

As with the minimum wage claim, the Plaintiff has proven that Zhang employed both Pichardo and Vasquez, that the Employees engaged in interstate commerce, and that Zhang paid each of the Employees an amount less than required by the overtime provisions of the FLSA. Therefore, the Plaintiff is entitled to judgment as a matter of law on the overtime claims. *See* 29 U.S.C. §§ 207(a), 215(a).

### c. The Recordkeeping Provisions

Finally, the FLSA requires that covered employers "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c). Employers are generally required to keep these records for a period of two or three years, depending on the particular information in question. *See generally* 29 C.F.R. §§ 516.5, 516.6. Failure to keep appropriate records constitutes an independent violation of the FLSA. *See* 29 U.S.C. § 215. *See also Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 398 (E.D.N.Y. 2013) (noting that maintaining inadequate records "constituted a per se violation of the Act"). Because there is no factual dispute that Zhang did not maintain records as mandated by the FLSA, Plaintiff is entitled to judgment as a matter of law on the recordkeeping claims. *See* 29 U.S.C. §§ 211, 215(a).

Further, where, as here, the employer has not kept legally sufficient records, "the employer cannot meet its burden to rebut the Labor and Wage investigators' reasonable

estimates of backpay due to the employees." *Supporting Hands*, 2013 WL 1897822, at *16. *See also Donovan v. United Video, Inc.*, 725 F.2d 577, 584 (10th Cir. 1984) ("Having failed to keep accurate time records for the employees in question, [defendant] cannot be heard to complain that the back wage award lacks the precision of measurement that would be possible had it maintained proper records."). This is precisely such a case; in the absence of substantive records, it is appropriate and necessary for the Court to rely, as it does here, on the sworn declarations of employees and the computation sheets prepared by the Division. *See Hodgson v. Humphries*, 454 F.2d 1279, 1282 (10th Cir. 1972) (explaining that while "records kept in compliance with Section 11(c) of the Act are, undoubtedly, the most persuasive proof of wages paid and hours worked," where such records are unavailable it is permissible to rely on "computation sheets" as well as employee testimony "concerning the approximate dates of their employment, the number of hours they generally worked, and the precise amount of wages they received"). *See also Solis v. Melt Brands Stores, LLC*, No. 11–cv–00292–CMA–BNB, 2012 WL 364685, at *4 (D. Colo. Feb. 2, 2012) (holding that in the absence of employer records, "Plaintiff's estimates of the hours worked and wages earned is sufficient evidence from which an award of damages under the FLSA may be made"). Given the complete lack of reliable employer records in this case, the Court finds that Plaintiff has met its burden of establishing the amount of damages in the instant case through computation sheets and employee statements.

### d. Remedies

In addition to compensatory damages, the FLSA authorizes the recovery of "an equal amount of liquidated damages." 29 U.S.C. § 216(c). This Court is authorized to "eliminate or reduce the award of liquidated damages *only if* the employer shows both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the Act."

*Renfro v. City of Emporia,* 948 F.2d 1529, 1540 (10th Cir. 1991) (emphasis added) (internal quotation marks omitted). *See also* 29 U.S.C. § 260. Zhang has not even attempted to make any such showing; the Court will order full liquidated damages of $25,168.08, equal to the amount of actual damages proven.

      The Plaintiff has also requested that the Court enjoin Zhang "from further violations of the Act" as authorized in Section 17 of the FLSA. Doc. 23-1 at 26. *See also* 29 U.S.C. § 217. The purpose of such prospective injunctions is to "effectuate congressional policy against substandard labor conditions by preventing future violations." *Metzler v. IBP, Inc.*, 127 F.3d 959, 963 (10th Cir. 1997). While "the moving party must satisfy the court that relief is needed" and that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive," there is no genuine risk of "substantive hardship" unduly foisted on employers, as the injunction merely requires them "to do what the Act requires anyway." *Id.* In determining whether to grant a prospective remedial injunction under the FLSA, courts properly consider "(1) the previous conduct of the employer; (2) the current conduct of the employer; and (3) the dependability of the employer's promises for future compliance. The most important factor is the likelihood that the employer will comply with the Act in the future." *Reich*, 30 F.3d at 657.

      An injunction is warranted in the instant case. First, Zhang has consistently violated the Act for at least the past three years with respect to at least two of his employees. Second, Zhang persisted in violating the Act *even after* the Division met with him, explained the violations, and Zhang agreed to abide by the terms of the FLSA. Third, not only did Zhang continue to flout his agreement with federal regulators after giving his word that he would comply, but also he attempted to conceal the fact that he had not complied with his agreement by urging the

Employees to lie to the Division and sending the Division erroneous and misleading documentation.  Fourth, Zhang is expected to open a new restaurant in the near future, such that there is a continued risk that Zhang will violate the law in the future.  Given this sustained history of intransigence and duplicity, the Court finds that there is a substantial risk that Zhang will violate the FLSA in the future and that whatever promises of prospective compliance that Zhang might offer cannot be trusted.  Consequently, the Court will permanently enjoin Zhang from violating the FLSA.

## CONCLUSION

As discussed with respect to each of the substantive claims above, the uncontested facts make patent that the Plaintiff is entitled to judgment as a matter of law on every claim that it has presented.  Further, the Court finds that the Plaintiff has appropriately proven the amount compensatory damages owed, the availability of liquidated damages, and the need for a permanent injunction to prevent continued violations of the Act.  Finally, because the Act authorizes the payment of attorney's fees and costs to prevailing Plaintiffs, the Court will entertain a motion pursuant to local rule 54.5 specifying the amount sought.  *See* 29 U.S.C. § 216; D.N.M.LR-CIV.54.5.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. 23] is **GRANTED** in its entirety.

Dated this 30th day of December, 2014.

_____
**MARTHA VÁZQUEZ**
UNITED STATES DISTRICT JUDGE